IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNION PACIFIC RAILROAD COMPANY,
a Delaware Corporation,

05 AUG 24 PM 1:44

        Plaintiff,                            CIV 04-0724 JB ACT

v.

PHILLIP LARKIN, ANTONIO G. DIAZ,
AND SCOTT R. CRAIG,

        Defendants.

## MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AN AWARD OF ATTORNEYS' FEES AND MEMORANDUM IN SUPPORT

### INTRODUCTION

This motion arises from counsel for Mr. Diaz' and Mr. Craig's adamant refusal to abide by the terms of a Settlement Agreement he entered into and affirmed during the parties' mediation before Magistrate Judge Torgerson. On July 25, 2005, the parties to this litigation, Phillip Larkin (represented by Mr. Zito and Mr. O'Reilly), Anthony Diaz and Scott Craig (represented by Kevin Brodar and Yolanda Gallegos), and Union Pacific Railroad (represented by John Thal and Randy Logan) met in a day-long mediation before Magistrate Judge Torgerson. The parties negotiated and deliberated throughout the day and ultimately reached an agreement. The parties and Magistrate Judge Torgerson met in open court, following the agreement having been reached, in order to memorialize the terms of their agreement. During that session, additional terms were discussed and the parties finally memorialized the terms of their agreement in a document drafted by Magistrate Judge Torgerson, revised by the parties' counsel, re-drafted by Magistrate Judge Torgerson, and ultimately executed by the parties and their counsel. The document, entitled "Settlement Agreement" (attached as Exhibit A) sets forth the terms of the



parties' agreement. Counsel for Union Pacific then offered to prepare the appropriate releases and to formalize the terms of the Settlement Agreement and everyone agreed to that approach. Magistrate Judge Torgerson urged that the parties promptly complete the settlements and that the case be dismissed pursuant to stipulated motions to dismiss.

Over the course of the next week, counsel for Union Pacific prepared drafts of separate releases and settlement agreements that were sent to counsel for Mr. Larkin and counsel for Defendants Craig and Diaz. In short order, counsel for Mr. Larkin agreed to the terms of the mutual release and settlement agreement, it was executed, and that settlement has been finalized. Similarly, Union Pacific's counsel sent a draft of a settlement agreement and mutual release to counsel for Defendants Craig and Diaz, specifically incorporating the terms of the Settlement Agreement agreed upon by parties during the July 25, 2005 mediation. Mr. Brodar has refused to agree to the precise terms of the Settlement Agreement that he executed on behalf of his clients during the course of the July 25 mediation, instead insisting upon inclusion of a term that was considered and rejected by all parties (including Mr. Brodar) that executed the July 25 Settlement Agreement.

The disagreement eventually led to a telephonic hearing before Magistrate Judge Torgerson on the afternoon of August 15, 2005. Judge Torgerson heard argument of counsel and at the conclusion of that hearing, he advised the parties that inasmuch as he had served as the mediator, he could not rule upon a motion to enforce a settlement agreement (suggesting instead that such a motion be submitted to the federal judge presiding over the case). He did, however, express the view that he would recommend to Judge Browning that the language proposed by Union Pacific in its draft settlement agreement, which was identical to the "Settlement Agreement" executed by the parties at the conclusion of the July 25 mediation, should be the

language incorporated into the finalized settlement documents. Magistrate Judge Torgerson then urged that with the benefit of his views, counsel resolve the dispute.

Notwithstanding the results of that hearing, Mr. Brodar has dogmatically refused to agree to the language he had approved in the Settlement Agreement, and now seeks to alter the terms of the parties' Settlement Agreement in an effort to gain what he apparently believes is a tactical advantage for the benefit of the United Transportation Union, as opposed to his clients, Defendants Craig and Diaz, who also approved the July 25 Settlement Agreement. Counsel for Union Pacific has repeatedly urged that the parties execute the final settlement agreement in the form they had agreed to at the conclusion of the mediation, but Mr. Brodar has refused. Now, nearly one month after the mediation, a settlement agreement still has not been executed and the case remains pending. If a final settlement is not enforced by the Court, the entire settlement is posed to unravel. Union Pacific requests that the Court enter its order enforcing the settlement agreement on the terms that Mr. Brodar agreed to on July 25, 2005. Union Pacific also requests that, given Mr. Brodar's unreasonable positions which have needlessly protracted this litigation, it be awarded its attorneys' fees incurred as a result of having to file this motion pursuant to 28 U.S.C. § 1927.

## CHRONOLOGY OF EVENTS

1. As the Court is aware, this is a case that has, from the outset, been contentious. On July 25, 2005, the parties mediated before Magistrate Judge Alan Torgerson. During the afternoon session, Magistrate Judge Torgerson advised the parties that he believed they had reached a settlement agreement and the parties then proceeded to meet in open court in order to finalize its terms.

3

2.  During the course of the mediation, Magistrate Judge Torgerson had advised counsel for Union Pacific that one point that Mr. Brodar sought in the negotiations on behalf of Defendants Diaz and Craig (the Chairman and Vice-Chairman of UTU Local No. 18) was that Union Pacific would return certain documents (minutes and sign-in sheets for UTU Local No. 18) following the conclusion of the litigation. Union Pacific agreed. In the open court session, Mr. Brodar explained that he also wanted an agreement that Union Pacific would return the depositions of United Transportation Union officers who had been deposed in the litigation and seven CD's containing information that had been produced by the United Transportation Union during the course of the litigation. The depositions of the UTU officers (who testified as Rule 30(b)(6) deponents) amounted to hundreds of pages of testimony. Once again, although these points had not been raised during the mediation session, and although they had nothing to do with Defendants Diaz and Craig, Union Pacific agreed.

3.  At that point, Mr. Brodar made an additional request. He requested that Union Pacific agree not only that it would not "use the documents" that it had agreed to return, in management-union negotiations, but also that it would not use the "information contained in those documents" in connection with union-management negotiations. A discussion on that specific point ensued, with counsel for Union Pacific pointing out that inasmuch as the documents that were being returned included depositions of UTU officers that numbered in the hundreds of pages and that those depositions included topics as wide-ranging as compensation, work schedules, drug testing, the Designated Legal Counsel program, corruption within the union, the grand jury proceedings that led to the indictments and imprisonment of certain UTU officials, ongoing negotiations concerning the Federal Employers Liability Act (FELA), and a myriad of other issues (much of which is already in the collective consciousness of Union Pacific

4

management), it would be impossible for Union Pacific to commit that it would not use "the information" contained in those depositions in connection with ongoing management-union negotiations that were addressing many of the same issues. Union Pacific's counsel pointed out that to make such an agreement would be a recipe for disaster and that it would invariably lead to additional litigation as to whether there had been breaches of the Settlement Agreement.

4. Ultimately, all of the parties agreed and both the parties and their counsel (including Mr. Brodar) executed the "Settlement Agreement", attached hereto as Exhibit A, which contains the following language:

> The Union Pacific Railroad Company will also agree not to use any of these documents in management-union negotiations.

*See* Ex. A, at p. 2.

5. Within approximately one week, Union Pacific sent a draft of a finalized "Settlement Agreement and Mutual Release of All Claims" to Mr. Brodar. Several days later, Mr. Brodar returned the draft of the Settlement Agreement and Mutual Release of All Claims, suggesting minor changes, with one exception. In his proposed draft, Mr. Brodar once again sought to insert the words "or the information contained therein" into the sentence that Union Pacific had provided to him ("Union Pacific also agrees that it shall not use the referenced documents in any management-union negotiations"), which precisely tracked the language agreed to in the July 25 Settlement Agreement. *Compare* Exhibit C (Union Pacific's draft, p. 3) to Exhibit B (Mr. Brodar's proposed revision, p. 3).

6. Union Pacific responded to Mr. Brodar's comments on August 4, incorporating Mr. Brodar's minor revisions, but again pointing out that the language he sought to have included in the settlement agreement was language that had been specifically discussed and rejected, in the original mediation and the July 25 Settlement Agreement and as to which Union

5

Pacific would not and could not agree. *See* August 4, 2005 letter from Union Pacific's counsel to Mr. Brodar, attached as Exhibit D.

7. Thereafter, Union Pacific's counsel continued to request that Mr. Brodar approve the proposed form of Settlement Agreement and Mutual Release of All Claims, so that the case could be finalized. Mr. Brodar refused, without inclusion of the additional language he sought to have placed into the agreement.

8. Confronted with Mr. Brodar's refusal to approve the form of Settlement Agreement and Mutual Release of All Claims that contained the identical language that Mr. Brodar had agreed to during the mediation, Union Pacific sought a hearing before Magistrate Judge Torgerson. That hearing was conducted on August 15, 2005. In that telephonic hearing, Magistrate Judge Torgerson heard argument from both counsel as to their proposals regarding the language that should be incorporated into the final agreement. At the conclusion of the hearing, Magistrate Judge Torgerson advised the parties that inasmuch as he had mediated the case, he did not feel it would be appropriate for him to rule as to which form of settlement agreement should ultimately be enforced. However, Magistrate Judge Torgerson advised the parties that he recalled the specific negotiations concerning the language in dispute, and that he agreed with Union Pacific that the language incorporated into the July 25 "Settlement Agreement" which had been incorporated verbatim into Union Pacific's proposed Settlement Agreement and Mutual Release of All Claims, was the appropriate language to include in the final document. Magistrate Judge Torgerson indicated that in the event a motion to enforce the terms of the settlement agreement were filed with the district court, he would advise Judge Browning of his understanding of the terms of the July 25 Settlement Agreement in a manner consistent with the view he had expressed during the hearing. Accordingly, Magistrate Judge

6

Torgerson urged that the parties resolve their dispute with the benefit of his advice, and without the necessity of further motion practice.

9. Following the telephonic hearing with Magistrate Judge Torgerson, Union Pacific reiterated its request that Mr. Brodar approve the form of settlement agreement which contained the identical language that he had approved during the course of the July 25 mediation. Mr. Brodar has refused, indicating that he has needed to confer with general counsel for the United Transportation Union (which, of course, is not a party to this case). Finally, after repeated efforts to have Mr. Brodar approve the form of settlement agreement proposed by Union Pacific, Mr. Brodar has continued to refuse, now proposing the following language:

> UP also agrees that it shall not use the referenced documents <u>or the statements by the officers deposed</u> in any labor-management negotiations.

*See* August 22, 2005 letter, attached as Ex. D.

10. Mr. Brodar's August 22, 2005 language has precisely the same affect as that that he has been attempting repeatedly to foist upon Union Pacific--it seeks to prevent Union Pacific's use of "the statements" by the UTU officers who were deposed, as referenced in their depositions. As pointed out at the original mediation, during repeated correspondence to Mr. Brodar, during the telephonic hearing before Magistrate Judge Torgerson, and in correspondence that has taken place subsequent to that telephonic hearing, Mr. Brodar's proposed language is **unacceptable**. It would be impossible for Union Pacific to disregard "the statements" made by UTU officers in their depositions (which constitute hundreds of pages of depositions, and would cover all of the wide-ranging subjects that are ongoing matters of union-management negotiations) in this Settlement Agreement.

11.     It has become obvious that Mr. Brodar is no longer representing the interests of Mr. Craig and Mr. Diaz (who approved the July 25 Settlement Agreement) in connection with his dogmatic refusal to approve a settlement agreement that contains the identical language that he had approved on July 25, 2005. Instead, his motivation is to obtain a benefit for the United Transportation Union (a non-party to this litigation) that he did not achieve in the mediation. Mr. Brodar's conflict of interest is apparent and has led to unnecessary and extensive delays in finalizing the settlement of this litigation. Under the circumstances, Union Pacific seeks its attorneys' fees incurred in filing what should have been an unnecessary motion, pursuant to 28 U.S.C. § 1927. That section provides:

> Any attorney...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Mr. Brodar's conduct, in refusing to honor the agreement that he entered into on July 25, 2005, again in ignoring both the request of counsel and the advice of Magistrate Judge Torgerson, constitutes precisely the kind of vexatious litigation which has unnecessarily multiplied these proceedings, leading to additional hearings both before Magistrate Judge Torgerson and the Court.

WHEREFORE, Union Pacific requests that the Court enter its order enforcing the Settlement Agreement and requiring that Defendants Craig and Diaz execute the "Settlement Agreement and Mutual Release of All Claims" in the form proposed by Union Pacific and attached as Exhibit C to this Motion and that Union Pacific be awarded its attorneys' fees incurred in filing the present Motion pursuant to 28 U.S.C. § 1927.

ATKINSON & THAL, P.C.

By *[signature]*
John S. Thal
W.R. Logan
Michael Kaemper
Atkinson & Thal, P.C.
201 Third Street NW, Ste. 1850
Albuquerque, NM 87102
(505) 764-8111
*Attorneys for Union Pacific*

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on the 24th day of August, 2005, a copy of [Union Pacific's] MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR AN AWARD OF ATTORNEYS' FEES AND MEMORANDUM IN SUPPORT was faxed and mailed to the following counsel of record:

Kevin C. Brodar, Esq.
Associate General Counsel
United Transportation Union
14600 Detroit Avenue
Cleveland, OH 44107

Yolanda R. Gallegos, Esq.
Gallegos Legal Group
315 Eighth Street, S.W.
Albuquerque, NM 87102

and mailed to the following counsel of record:

Mel B. O'Reilly, Esq.
7125 Prospect Place, N.E.
Albuquerque, NM 87110

Marc A. Zito, Esq.
P.O. Box 4340
Houston, TX 77210-4340

*[signature]*
John S. Thal

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.